IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ZACHARY T. HOUX,                      )
                                      )
            Plaintiff,                )
                                      )
v.                                    )   Case No. CIV-11-211-KEW
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social                )
Security Administration,              )
                                      )
            Defendant.                )

## OPINION AND ORDER

Plaintiff Zachary T. Houx (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 12, 1978 and was 32 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade. Claimant worked in the past as a delivery driver, stocker, surveyor-rod man, cashier, and short order cook. Claimant alleges an inability to work beginning August

1, 2007 due to limitations resulting from uncontrolled diabetes mellitus and seizures.

## Procedural History

On February 9, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On May 4, 2010, an administrative hearing was held before ALJ John Volz in Tulsa, Oklahoma. On May 17, 2010, the ALJ issued an unfavorable decision. On April 13, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in reaching a

4

decision which was not supported by substantial evidence.

## Discussion

Claimant contends the ALJ failed to consider his peripheral neuropathy in his hands nor his statements that he suffered from persistent nausea from gastroparesis. Claimant suffers from type I diabetes and it is poorly controlled. (Tr. 368-405). In his decision, the ALJ found Claimant had a history of missed appointments in the treatment of his diabetes. He also determined from the medical record that Claimant had not refilled his insulin prescription from November 2, 2007 until February 5, 2008. (Tr. 15). The ALJ also set forth that on March 25, 2008, Claimant had called his physician requesting Lortab, a pain medication, because he was controlling his sugars with it. The facility had not previously dispensed Lortab to Claimant and the physician noted Claimant did not keep his appointments and had a history of non-compliance. (Tr. 16).

Claimant also suffered from recurrent nausea and vomiting. He was evaluated by Dr. Jeffrey L. Bigler, a gastroenterologist. Dr. Bigler concluded Claimant's nausea was caused by his uncontrolled diabetes which significantly raised the possibility of diabetic gastroparesis. Dr. Bigler prescribed medication for treatment of the condition. (Tr. 16). Claimant also self-medicated with

5

marijuana to control his nausea without a prescription.  (Tr. 16).
The ALJ found that many of his complaints could be traced to the
use of marijuana.  (Tr. 17).

Additionally, the ALJ discussed the findings of diabetic
neuropathy by Dr. Kalvin L. White, noting Dr. White never placed
restrictions upon Claimant.  (Tr. 16).

The medical record indicates Claimant was diagnosed with
diabetic peripheral polyneuropathy by Dr. Christian Hanson in an
examination on February 17, 2009.  Dr. Hanson, however, determined
Claimant had normal muscle strength and tone with no gross motor or
sensory deficits noted.  (Tr. 488).

Claimant was evaluated by Dr. Seth Nodine on May 5, 2009.  Dr.
Nodine noted Claimant stated he was diagnosed with peripheral
neuropathy.  However, Dr. Nodine also found Claimant's strength was
symmetric and normal 5/5.  Claimant's grip strength was also 5/5
bilaterally.  (Tr. 449).  Dr. Nodine determined Claimant could
effectively oppose the thumb to the fingertips, manipulate small
objects, and effectively grasp tools such as a hammer.  (Tr. 454).

On June 25, 2009, Claimant was also evaluated by Dr. Kalvin L.
White.  Claimant also reported to Dr. White that he suffered from
neuropathy.  Upon examination, Dr. White found Claimant had
symmetrical muscle strength in his lower and upper extremities with
minimal hypersensitivity in his hands.  (Tr. 467).

6

Claimant was also diagnosed with diabetic ketoacidosis and diabetic gastroparesis at various times. At no time, however, did any medical professional limit his work activities.

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

No evidence in the record indicates that Claimant's peripheral neuropathy, though diagnosed, affects his ability to engage in work activity.  No medical professional has provided an opinion of diminished strength or hypersensitivity caused by the neuropathy. Claimant in large measure simply seeks an award of benefits for the existence of a medical condition which is without foundation.

As to Claimant's diabetic gastroparesis, he rests primarily upon his testimony regarding the frequency of his vomiting and the effect that it might have upon his ability to work.  The ALJ engaged in a proper credibility analysis on these statements and found that Claimant's testimony as to the severity and extent of his condition was exaggerated.  He properly relied upon Claimant's non-compliance with medical treatment and his activities of daily living in assessing the affect Claimant's gastroparesis and neuropathy has upon his ability to work and function.  As a result, this Court finds no error in the ALJ's findings of non-disability.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

8

DATED this _2nd_ day of July, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE